E-FILED
Wednesday, 21 November, 2007   10:28:19 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>                                                        )<br>       Plaintiff,                                 )<br>                                                        )<br>vs.                                                   )     No: _____<br>                                                        )<br>FORTY-SIX THOUSAND ONE HUNDRED )<br>NINETY ($46,190.00) AND 00/100 DOLLARS )<br>IN UNITED STATES CURRENCY,         )<br>                                                        )<br>       Defendant.                              ) | |

**FORFEITURE COMPLAINT IN REM**

NOW COME the United States of America, by its attorneys, Rodger A. Heaton, United States Attorney for the Central District of Illinois, and Assistant United States Attorney, Patricia A. McInerney, and for its complaint for forfeiture respectfully states as follows:

1.   This is an action <u>in rem</u> brought to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of all property because it is money furnished or intended to be furnished in exchange for a controlled substance in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, et seq., or are proceeds traceable to such an exchange.

2.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

3.   The defendant is Forty-Six Thousand One Hundred Ninety ($46,190.00) and 00/100 Dollars in U.S. Currency.

4. This action is brought in the Central District of Illinois, Springfield Division, as the events which are the subject of this matter occurred in Sangamon County, and will remain within the jurisdiction of this Court throughout the pendency of this action.

5. Based on the detailed facts below, which support a reasonable belief that the government will be able to meet its burden of proof at trial, the government believes that the defendant currency constitutes proceeds traceable to the exchange of controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, et seq., and is, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. Section 881(a)(6).

6. On June 22, 2007, an Illinois State Police Officer conducted a traffic stop on a black Cadillac, which was traveling southbound on Interstate 55 at milepost marker 105, for speeding and following too closely. The Officer asked the driver for his license and insurance, who was identified as Jose Luis Villanueva (Jose Villanueva). The registered owner of the vehicle was Victor Contreras Villanueva (Victor Villanueva), who is Jose Villanueva's uncle. A criminal history check revealed that Victor Villanueva had a prior conviction for marijuana distribution.

7. The Officer approached the vehicle and smelled a very strong odor of air freshener coming from inside the vehicle and noticed a package of brand new air freshener laying on the passenger seat.

8.     Jose Villanueva told the Officer that he was traveling from Chicago and driving the car to Mexico for Victor Villanueva. Jose Villanueva appeared to be extremely nervous and his hand was shaking when he handed his driver's license to law enforcement.

9.     A computer check revealed that Jose Villanueva's license was suspended. When asked if he knew his license was suspended, Jose Villanueva said he was unaware of that.   The Officer then requested that a canine come to the scene. While waiting for the canine, Jose Villanueva was issued a warning ticket for speeding and following too close, and a notice to appear for driving with a suspended license.

10.     The canine arrived at the scene and Villanueva was asked to step out of his vehicle. The Officer asked Jose Villanueva if there were any weapons or drugs in the vehicle and Jose Villanueva stated "no."    When Jose Villanueva was asked if there were any large sums of U.S. Currency in the vehicle, Villanueva first indicated "no" but then stated that he had about $5,000 in his pants pocket.  Jose Villanueva was asked if the Officer could get the currency out of his pants pocket, and Jose Villanueva stated "yes."   The Officer reached into his pocket and pulled out Jose Villanueva's wallet and a bundle of money.  The money was separated into five bundles and rubber banded together. Jose Villanueva stated the money in the wallet was his uncle's money that had been given to him for the trip to pay for gas and to legalize the car in Mexico. When asked about the bundled money, Jose Villanueva stated it was money that he had been saving.

3

11. Jose Villanueva was asked if there was any other money in the car and Jose Villanueva shook his head no. Jose Villanueva also stated that he did not think the canine would alert on the money or on the car when asked by the Officer. Jose Villanueva was asked if he was sure of that and Jose Villanueva asked the Officer what he meant by that. The Officer advised him that the canine was trained to alert on the odor of narcotics and then asked him again if the dog would alert. Jose Villanueva shook his head yes and no. Jose Villanueva finally admitted to the Officer that he had a little bag of "weed" in the car and told the Officer that it was in the hole where the seat belt strap went through the seat. The Officer looked in this area and did not see the bag, but did notice the hole that Jose Villanueva referred to. The Officer looked under the driver's seat and located a small white plastic bag containing five grams of marijuana. Thereafter, Jose Villanueva and his vehicle was transported to District 9 Headquarters for a better search.

12. At District 9 Headquarters, Jose Villanueva was asked about the money that he had been saving up. Jose Villanueva indicated that he was trying to play soccer in Mexico and the money was for him because he does not get paid and the team does not pay for anything. Jose Villanueva was asked what he did for a living and he responded saying that he was paid $13.00 an hour as a mover. The Officer asked Jose Villanueva about the last time he worked, and Jose Villanueva stated that he had been in Mexico for two months trying to play professional soccer. The Officer asked if he worked in Mexico, and Jose Villanueva said "no."

13.     Jose Villanueva was asked how he was able to save up that much money if he was not working. Jose Villanueva suddenly changed his story and stated the money was a loan from his uncle. Jose Villanueva indicated that the Officer could contact his uncle to confirm his story about the money. Jose Villanueva looked at his cellphone and gave the Officer his uncle's phone number. Jose Villanueva told the Officer that his uncle's name was "Nacho" and that Nacho could speak English. The Officer went into another room and called the phone number provided by Jose Villanueva. A male answered the phone who confirmed that he was Jose Villanueva's uncle, Nacho. Nacho was advised that Jose Villanueva was stopped on a traffic stop and that law enforcement needed to confirm a few things. When asked if he gave any money to his nephew, Jose Villanueva, Nacho indicated that he had given $6,000 to him . Nacho told the Officer that the money was for his mother in Mexico to build a house. The Officer told Nacho that they had already found everything that was in the car and that he needed to be honest with the Officer. Nacho was asked again as to how much money was in the car. After a long pause, Nacho stated 40. The Officer asked Nacho if he meant $40,000 and Nacho stated "yes." Nacho was asked again about the money and Nacho stated that the money was for his mother. When asked again how much money was in the car, Nacho stated $45,000 this time. When asked again about the money, Nacho confirmed that the $45,000 was for his mother in Mexico, and thought the money would be in the glove box wrapped in plastic.

14.     After the phone conversation with Nacho, the Officer explained to Jose Villanueva that Nacho gave a different story about the money.  The Officer told Villanueva that Nacho did not know anything about soccer, and that the money was for Nacho's mother.  Jose Villanueva became visibly nervous and could not sit still.  Jose Villanueva's hands were shaking and his voice was cracking.  Jose Villanueva told the Officer that he did not tell them the money was for his grandmother because he did not want it to look like he was trying to do something illegal with the money.  The Officer told Villanueva that Nacho said there was a lot more money in the vehicle, and asked Villanueva where the money was located.  Villanueva told the Officer that the money was in a VTECH electronic alphabet desk toy.  The Officer located the VTECH toy and removed the screws on the back of the toy.  Inside the toy were three duct tape packages.  Inside two of the duct tape packages were three vacuum sealed packages and in the third duct taped package was two vacuum sealed packages.  Inside each of the vacuum sealed packages was $5,000 wrapped in aluminum foil.  During a further search of the vehicle, eight Vicodin pills were found in a cigar box.  The Officer seized $1,190 from Jose Villanueva's wallet, $5,000 from Jose Villanueva's pants pocket and $40,000 from the VTECH toy, which totaled $46,190.00.  This currency was placed in the garage of District 9 Headquarters and the canine made a positive alert on all of the currency.

15.     Jose Villanueva was told that he was under arrest for possession of a controlled substance and possession of cannabis.  Miranda Warnings were read to Jose

Villanueva at that time. Jose Villanueva consent to be interviewed.

16. The Officer told Jose Villanueva that the money being wrapped in duct taped bundles and concealed inside a child's toy was an indication that the money was drug money. Jose Villanueva stated that it was his idea to wrap the money this way for his own safety because the Mexican police and criminals will "murder you for that money." Jose Villanueva stated that he did not hide all the currency in the toy because he wanted to have some of the money ready to give up to the police or criminals in Mexico so he would not be robbed of it all.

17. Jose Villanueva stated that he was traveling to a small town outside of Guadalajara in the state of Jalisco, Mexico to give the money to his grandmother, Carolina Contreras, so that she could build a new house. Jose Villanueva claimed to have obtained permits in Mexico for the construction that he could show the Officer. Jose Villanueva said that uncle asked him to take the money in the car and Jose Villanueva agreed to do so, rather than converting the money to a bank note. Jose Villanueva stated that his uncle put the $40,000 in the toy and he did not know exactly where in the car the money had been concealed, which was understood by the Officer to mean Jose Villanueva's Uncle Victor, as opposed to his Uncle Nacho.

18. Jose Villanueva was asked about the Vicodin and marijuana. Jose Villanueva said that he hurt his wrist and had no insurance for treatment or prescriptions so a friend gave him the Vicodin. Jose Villanueva stated that the marijuana was his and he "just had it."

19. Jose Villanueva stated that he had not been working a regular job for a few months and had been in Mexico getting his grandmother's house ready to be rebuilt. Jose Villanueva stated that he nor his uncles had been in trouble for drugs. The Officer advised Jose Villanueva that his Victor Villanueva was a convicted drug smuggler. Jose Villanueva appeared to be more tense and anxious and said he was feeling sick and might vomit.

20. Jose Villanueva was asked about some pictures and videos from his cellphones where Jose Villanueva was holding a machine gun, a photo of a male holding a large heatsealed vacuum bag apparently filled with bundles of U.S. Currency and a video of Jose Villanueva with some cannabis in a drive up lane at a fast food restaurant while his car was behind a sheriff's department squad car. In the video, Jose Villanueva was bragging about how he was "rolling a blunt" of marijuana as he was in line behind the squad car. Jose Villanueva told the Officer that it was a fake machine gun that belonged to a friend of his who displayed it in parades in Chicago. Jose Villanueva said the male holding the large bag of currency was not him. Jose Villanueva confirmed that he was rolling the blunt of marijuana.

21. Jose Villanueva was shown the Illinois driver's license photo of Victor Villanueva and asked if this was his Uncle Victor. Jose Villanueva then told agents that he was not going to talk to them any longer. Villanueva said "Fuck it . . . just take me to jail" and was handcuffed at that time.

22. The Officer then proceeded to call Villanueva's Uncle Nacho to ask him about the money. At that time Nacho told the Officer in broken English that he could not speak English well. The Officer noted that he was on the speaker phone as voices speaking Spanish were speaking in the background.

23. A woman who identified herself as Mario Lott (Lott) said she was to act as a translator for Nacho. Lott insisted that Nacho could not speak English, even though the Officer told Lott that Nacho had engaged in a prolonged phone contact hours earlier and that Nacho was able to communicate effectively in English at that time.

24. At that time, Nacho was identified as Ignacio Villanueva Contreras (Ignacio Contreras). Ignacio Contreras indicated that his brother, Victor Villanueva worked at Burgess Morton in Geneva, Illinois and lived in Aurora, Illinois. He further indicated that Victor Villanueva was the registered owner of the car that Villanueva was driving with the concealed currency inside and that Victor was also a convicted cannabis smuggler who had done time in federal prison.

25. When asked how much money he sent with Jose Villanueva, Ignacio Contreras said $6,000. The call was ended at that time.

26. A criminal history check revealed that Victor Villanueva and Ignacio Contreras both had prior convictions for marijuana distribution and that they had been targets of DEA investigations in the past.

26. The defendant currency is now in the custody of the United States Marshal Service for the Central District of Illinois.

27. Based on the detailed facts above, which support a reasonable belief that the government will be able to meet its burden of proof at trial, the government believes that the seized $46,190.00 in United States Currency represents moneys furnished or intended to be furnished in exchange for a controlled substance or are the proceeds thereof and are, therefore, subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and forfeitable to the United States.

WHEREFORE, the United States of America prays that this Court forfeit the defendant currency, to the United States of America for disposition according to law, for the issuance of a Warrant in Rem, for costs of suit and for such other and further relief as the Court may deem necessary.

Respectfully Submitted,

RODGER A. HEATON
UNITED STATES ATTORNEY

By:    s/Patricia A. McInerney
Patricia A. McInerney - Illinois Bar No.0782440
Assistant United States Attorneys
318 South 6th Street
Springfield, IL 62701
Telephone: (217) 492-4450
patricia.a.mcinerney@usdoj.gov

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct based on information and belief.

Executed on this 20th day of November, 2007.


　　　　　　　　　　　　　　　　　　　　s/Glenn Haas
　　　　　　　　　　　　　　　　　　　　Glenn Haas, Special Agent
　　　　　　　　　　　　　　　　　　　　Drug Enforcement Administration

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
$46,190.00 in U.S. Currency

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Patricia A. McInerney
United States Attorney's Office
318 S. Sixth Street
Springfield, IL 62701
217-492-4450

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 550 Civil Rights | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE _____
SIGNATURE OF ATTORNEY OF RECORD
s/Patricia McInerney

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse (Rev. 12/96)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.