E-FILED
Wednesday, 09 January, 2008 01:53:12 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Case No. 07 CV 3314 |
| | ) |
| v. | ) Hon. Jeanne E. Scott |
| | ) Mag. Byron G. Cudmore |
| FORTY-SIX THOUSAND ONE HUNDRED NINETY ($46,190.00) AND 00/100 DOLLARS IN UNITED STATES CURRENCY | ) |
| | ) |
| Defendant. | ) |
| | ) |
| VICTOR C. VILLANUEVA and ALICIA CONTRERAS | ) |
| | ) |
| Claimants. | ) |

## NOTICE OF FILING

To: All Counsel of Record

    Please take notice that on January 9, 2008, I caused to be filed with the clerk of the US District Court, Central District of Illinois, Springfield Division, **Claimants' Answer to Forfeiture Complaint In Rem**, a copy of which is attached hereto and served upon you.

                                              s/ Michael C. Rosenblat
                                                Attorney for Claimants

Michael C. Rosenblat
**MICHAEL C. ROSENBLAT, P.C.**
33 North LaSalle Street, Suite 2900
Chicago, IL 60602
312-948-0006

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ) <br> ) <br> ) <br> ) <br> ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FORTY-SIX THOUSAND ONE HUNDRED ) <br> NINETY ($46,190.00) AND 00/100 DOLLARS ) <br> IN UNITED STATES CURRENCY ) <br> ) <br>     Defendant. ) <br> _____) <br> ) <br> VICTOR C. VILLANUEVA and ) <br> ALICIA CONTRERAS ) <br> ) <br>     Claimants. ) | Case No. 07 CV 3314 <br><br> Hon. Jeanne E. Scott <br> Mag. Byron G. Cudmore |

## CLAIMANTS' ANSWER TO
## FORFEITURE COMPLAINT IN REM

NOW COMES, Claimants Victor C. Villanueva and Alicia Contreras ("Claimants") by their attorney, and hereby Answer Plaintiff's Forfeiture Complaint in Rem, as follows:

1.   This is an action in rem brought to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of all property because it is money furnished or intended to be furnished in exchange for a controlled substance in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, et seq., or are proceeds traceable to such an exchange.

**ANSWER:**   To the extent that the allegations in Paragraph 1 state conclusions of law, no responsive pleading is required. To the extent that a response is required Claimants deny the allegations.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

**ANSWER:** Claimants admit that this Court has jurisdiction.

3. The defendant is Forty-Six Thousand One Hundred Ninety ($46,190.00) and 00/100 Dollars in U.S. Currency.

**ANSWER:** Claimants admit that Defendant is Forty-Six Thousand One Hundred Ninety ($46,190.00) and 00/100 dollars in U.S. Currency.

4. This action is brought in the Central District of Illinois, Springfield Division, as the events which are the subject of this matter occurred in Sangamon County, and will remain within the jurisdiction of this Court throughout the pendency of this action.

**ANSWER:** Claimants admit that the action is brought in the Central District of Illinois, Springfield Division. Claimants have no knowledge or information to form a belief as to the truth of the remaining allegations and therefore deny the remaining allegations contained in paragraph 4. To the extent that the allegations in Paragraph 4 state conclusions of law, no responsive pleading is required.

5. Based on the detailed facts below, which support a reasonable belief that the government will be able to meet its burden of proof at trial, the government believes that the defendant currency constitutes proceeds traceable to the exchange of controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, et seq., and is, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. Section 881(a)(6).

**ANSWER:** To the extent that the allegations in Paragraph 5 state conclusions of law, no responsive pleading is required. Claimants deny the remaining allegations contained in paragraph 5.

6. On June 22, 2007, an Illinois State Police Officer conducted a traffic stop on a black Cadillac, which was traveling southbound on Interstate 55 at milepost marker 105, for speeding and following too closely. The Officer asked the driver for his license and insurance, who was identified as Jose Luis Villanueva (Jose Villanueva). The registered owner of the vehicle was Victor Contreras Villanueva (Victor Villanueva), who is Jose Villanueva's uncle. A criminal history check revealed that Victor Villanueva had a prior conviction for marijuana distribution.

**ANSWER:**   Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained paragraph 6. Claimant Victor Villanueva admits that he was the registered owner of a black Cadillac, that he is Jose Villanueva's uncle and that he has a prior criminal conviction.

7.   The Officer approached the vehicle and smelled a very strong odor of air freshener coming from inside the vehicle and noticed a package of brand new aft freshener laying on the passenger seat.

**ANSWER:**   Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 7.

8.   Jose Villanueva told the Officer that he was traveling from Chicago and driving the car to Mexico for Victor Villanueva. Jose Villanueva appeared to be extremely nervous and his hand was shaking when he handed his driver's license to law enforcement.

**ANSWER:**   Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 8.

9.   A computer check revealed that Jose Villanueva's license was suspended. When asked if he knew his license was suspended, Jose Villanueva said he was unaware of that. The Officer then requested that a canine come to the scene. While waiting for the canine, Jose Villanueva was issued a warning ticket for speeding and following too close, and a notice to appear for driving with a suspended license.

**ANSWER:**   Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 9.

10.   The canine arrived at the scene and Villanueva was asked to step out of his vehicle. The Officer asked Jose Villanueva if there were any weapons or drugs in the vehicle and Jose Villanueva stated "no." When Jose Villanueva was asked if there were any large sums of U.S. Currency in the vehicle, Villanueva first indicated "no" but then stated that he had about $5,000 in his pants pocket. Jose Villanueva was asked if the Officer could get the currency out of his pants pocket, and Jose Villanueva stated "yes." The Officer reached into his pocket and pulled out Jose Villanueva's wallet and a bundle of money. The money was separated into five bundles and rubber banded together. Jose Villanueva stated the money in the wallet was his uncle's money that had been given to him for the trip to pay for gas and to legalize the car in Mexico. When asked about the bundled money, Jose Villanueva stated it was money that he had been saving.

**ANSWER:** Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 10.

11.  Jose Villanueva was asked if there was any other money in the car and Jose Villanueva shook his head no. Jose Villanueva also stated that he did not think the canine would alert on the money or on the car when asked by the Officer. Jose Villanueva was asked if he was sure of that and Jose Villanueva asked the Officer what he meant by that. The Officer advised him that the canine was trained to alert on the odor of narcotics and then asked him again if the dog would alert. Jose Villanueva shook his head yes and no. Jose Villanueva finally admitted to the Officer that he had a little bag of "weed" in the car and told the Officer that it was in the hole where the seat belt strap went through the seat. The Officer looked in this area and did not see the bag, but did notice the hole that Jose Villanueva referred to. The Officer looked under the driver's seat and located a small white plastic bag containing five grams of marijuana. Thereafter, Jose Villanueva and his vehicle was transported to District 9 Headquarters for a better search.

**ANSWER:** Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 11.

12.  At District 9 Headquarters, Jose Villanueva was asked about the money that he had been saving up. Jose Villanueva indicated that he was trying to play soccer in Mexico and the money was for him because he does not get paid and the team does not pay for anything. Jose Villanueva was asked what he did for a living and he responded saying that he was paid $13.00 an hour as a mover. The Officer asked Jose Villanueva about the last time he worked, and Jose Villanueva stated that he had been in Mexico for two months trying to play professional soccer. The Officer asked if he worked in Mexico, and Jose Villanueva said "no."

**ANSWER:** Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 12.

13.  Jose Villanueva was asked how he was able to save up that much money if he was not working. Jose Villanueva suddenly changed his story and stated the money was a loan from his uncle. Jose Villanueva indicated that the Officer could contact his uncle to confirm his story about the money. Jose Villanueva looked at his cellphone and gave the Officer his uncle's phone number. Jose Villanueva told the Officer that his uncle's name was "Nacho" and that Nacho could speak English. The Officer went into another room and called the phone number provided by Jose Villanueva. A male answered the phone who confirmed that he was Jose Villianueva's uncle, Nacho. Nacho was advised that Jose Villanueva was stopped on a traffic stop and that law enforcement needed to confirm a few things. When asked if he gave any money to his nephew, Jose Villanueva, Nacho indicated that he had given $6,000 to him. Nacho told the Officer that the money was for his mother in Mexico to build a house. The Officer told Nacho that they had already found everything that was in the car and that he needed to be honest with the Officer. Nacho was asked again as to how much money was in the car. After a long pause, Nacho stated

4

40. The Officer asked Macho if he meant $40,000 and Nacho stated "yes." Nacho was asked again about the money and Nacho stated that the money was for his mother. When asked again how much money was in the car, Nacho stated $45,000 this time. When asked again about the money, Nacho confirmed that the $45,000 was for his mother in Mexico, and thought the money would be in the glove box wrapped in plastic.

**ANSWER:**   Claimants have no knowledge or information to form a belief as to the

truth of the allegations and therefore deny the allegations contained in paragraph 13.

14.   After the phone conversation with Nacho, the Officer explained to Jose Villanueva that Nacho gave a different story about the money. The Officer told Villanueva that Nacho did not know anything about soccer, and that the money was for Nacho's mother. Jose Villanueva became visibly nervous and could not sit still. Jose Villanueva's hands were shaking and his voice was cracking. Jose Villanueva told the Officer that he did not tell them the money was for his grandmother because he did not want it to look like he was trying to do something illegal with the money. The Officer told Villanueva that Nacho said there was a lot more money in the vehicle, and asked Villanueva where the money was located. Villanueva told the Officer that the money was in a VTECH electronic alphabet desk toy. The Officer located the VTECH toy and removed the screws on the back of the toy. Inside the toy were three duct tape packages. Inside two of the duct tape packages were three vacuum sealed packages and in the third duct taped package was two vacuum sealed packages. Inside each of the vacuum sealed packages was $5,000 wrapped in aluminum foil. During a further search of the vehicle, eight Vicodin pills were found in a cigar box. The Officer seized $1,190 from Jose Villanueva's wallet, $5,000 from Jose Villanueva's pants pocket and $40,000 from the VTECH toy, which totaled $46,190.00, This currency was placed in the garage of District 9 Headquarters and the canine made a positive alert on all of the currency.

**ANSWER:**   Claimants have no knowledge or information to form a belief as to the

truth of the allegations and therefore deny the allegations contained in paragraph 14.

15.   Jose Villanueva was told that he was under arrest for possession of a controlled substance and possession of cannabis. Miranda Warnings were read to Jose Villanueva at that time. Jose Villanueva consent to be interviewed.

**ANSWER:**   Claimants have no knowledge or information to form a belief as to the

truth of the allegations and therefore deny the allegations contained in paragraph 15.

16.   The Officer told Jose Villanueva that the money being wrapped in duct taped bundles and concealed inside a child's toy was an indication that the money was drug money. Jose Villanueva stated that it was his idea to wrap the money this way for his own safety because the Mexican police and criminals will "murder you for that money" Jose Villanueva stated that he did not hide all the currency in the toy because he wanted to have some of the money ready to give up to the police or criminals in Mexico so he would not be robbed of it all.

5

**ANSWER:** Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 16.

17.    Jose Villanueva stated that he was traveling to a small town outside of Guadalajara in the state of Jalisco, Mexico to give the money to his grandmother, Carolina Contreras, so that she could build a new house. Jose Villanueva claimed to have obtained permits in Mexico for the construction that he could show the Officer. Jose Villanueva said that uncle asked him to take the money in the car and Jose Villanueva agreed to do so, rather than converting the money to a bank note. Jose Villanueva stated that his uncle put the $40,000 in the toy and he did not know exactly where in the car the money had been concealed, which was understood by the Officer to mean Jose Villanueva's Uncle Victor, as opposed to his Uncle Nacho.

**ANSWER:** Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 17.

18.    Jose Villanueva was asked about the Vicodin and marijuana. Jose Villanueva said that he hurt his wrist and had no insurance for treatment or prescriptions so a friend gave him the Vicodin. Jose Villanueva stated that the marijuana was his and he "just had it."

**ANSWER:** Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 18.

19.    Jose Villanueva stated that he had not been working a regular job for a few months and had been in Mexico getting his grandmother's house ready to be rebuilt. Jose Villanueva stated that he nor his uncles had been in trouble for drugs. The Officer advised Jose Villanueva that his Victor Villanueva was a convicted drug smuggler. Jose Villanueva appeared to be more tense and anxious and said he was feeling sick and might vomit.

**ANSWER:** Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained paragraph 19.

20.    Jose Villanueva was asked about some pictures and videos from his cellphones where Jose Villanueva was holding a machine gun, a photo of a male holding a large heatsealed vacuum bag apparently filled with bundles of U.S. Currency and a video of Jose Villanueva with some cannabis in a drive up lane at a fast food restaurant while his car was behind a sheriffs department squad car. In the video, Jose Villanueva was bragging about how he was "rolling a blunt" of marijuana as he was in line behind the squad car. Jose Villanueva told the Officer that it was a fake machine gun that belonged to a friend of his who displayed it in parades in Chicago. Jose Villanueva said the male holding the large bag of currency was not him. Jose Villanueva confirmed that he was rolling the blunt of marijuana.

**ANSWER:** Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 20.

21. Jose Villanueva was shown the Illinois driver's license photo of Victor Villanueva and asked if this was his Uncle Victor. Jose Villanueva then told agents that he was not going to talk to them any longer. Villanueva said 'Fuck it . . . . . just take me to jail" and was handcuffed at that time.

**ANSWER:** Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 21.

22. The Officer then proceeded to call Villanueva's Uncle Nacho to ask him about the money. At that time Nacho told the Officer in broken English that he could not speak English well. The Officer noted that he was on the speaker phone as voices speaking Spanish were speaking in the background.

**ANSWER:** Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 22. .

23. A woman who identified herself as Mario Lott (Lott) said she was to act as a translator for Nacho. Lott insisted that Nacho could not speak English, even though the Officer told Lott that Nacho had engaged in a prolonged phone contact hours earlier and that Nacho was able to communicate effectively in English at that time.

**ANSWER:** Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 23.

24. At that time, Nacho was identified as Ignacio Villanueva Contreras (Ignacio Contreras). Ignacio Contreras indicated that his brother, Victor Villanueva worked at Burgess Morton in Geneva, Illinois and lived in Aurora, Illinois. He further indicated that Victor Villanueva was the registered owner of the car that Villanueva was driving with the concealed currency inside and that Victor was also a convicted cannabis smuggler who had done time in federal prison.

**ANSWER:** Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 24.

25. When asked how much money he sent with Jose Villanueva, Ignacio Contreras said $6,000. The call was ended at that time.

**ANSWER:** Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 25.

26. A criminal history check revealed that Victor Villanueva and Ignacio Contreras both had prior convictions for marijuana distribution and that they had been targets of DEA investigations in the past.

**ANSWER:** Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 26. Claimant Victor Villanueva further answers that he admits to a prior criminal conviction. Claimants have no knowledge or information to form a belief as to the truth of the remaining allegations and therefore deny the allegations.

26. [sic]   The defendant currency is now in the custody of the United States Marshal Service for the Central District of Illinois.

**ANSWER:** Claimants have no knowledge or information to form a belief as to the truth of the allegations and therefore deny the allegations contained in paragraph 26 [sic].

27. Based on the detailed facts above, which support a reasonable belief that the government will be able to meet its burden of proof at trial the government believes that the seized $46,190.00 in United States Currency represents moneys furnished or intended to be furnished in exchange for a controlled substance or are the proceeds thereof and are, therefore, subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and forfeitable to the United States.

**ANSWER:** To the extent that the allegations in Paragraph 27 state conclusions of law, no responsive pleading is required. To the extent that a response is required, Claimants deny the allegations.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The seizure of the Claimants property was in violation of the Fourth Amendment to the United States Constitution.

8

## SECOND DEFENSE

The forfeiture of the Claimants property would be in violation of the Claimants rights under the due process clause of the Fifth Amendment to the United States Constitution.

## THIRD DEFENSE

Forfeiture of Claimants property would be in violation of the Excessive Fines Clause of the Eight Amendment to the United States Constitution.

## FOURTH DEFENSE

Claimants are innocent owners of the Defendant property and were unaware of any conduct giving rise to forfeiture.

## PRAYER

WHEREFORE, Claimants, pray that this Court enter judgment as follows:

1. Dismiss Plaintiff's Complaint and enter judgment in favor of Claimants and order that the property be returned forthwith to Claimants;

2. That Claimants be awarded reasonable attorney fees, other litigation costs, post judgment interest, actual, and imputed interest; and

3. That Claimants be awarded such other relief that the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Claimants hereby demands trial by jury.

                Respectfully submitted,

                s/ Michael C. Rosenblat
                Attorney for Claimants

Michael C. Rosenblat
**MICHAEL C. ROSENBLAT, P.C.**
33 North LaSalle Street, Suite 2900
Chicago, IL 60602
312-948-0006

## VERIFICATION

I hereby declare under penalty of perjury that upon information and belief the foregoing is true and correct.

Executed: 1/9/08

_____
VICTOR C. VILLANUEVA

I hereby declare under penalty of perjury that upon information and belief the foregoing is true and correct.

Executed: 1/9/08

_____
ALICIA CONTRERAS

## CERTIFICATE OF SERVICE

I, Michael C. Rosenblat, an attorney, certify that I caused copies of the foregoing **Claimants' Answer to Forfeiture Complaint in Rem**, to be served pursuant to ECF as to Filing Users.

s/ Michael C. Rosenblat

## SERVICE LIST

*The United States of America v. Forty-Six Thousand One Hundred Ninety ($46,190.00) and 00/100 dollars in United States currency*
Case No. 07 CV 3314

Patricia A. McInerney
Assistant United States Attorney
318 South 6th Street
Springfield, IL 62701